**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SOLOMON REALTY COMPANY** : | |
| : | |
| **PLAINTIFF,** : | |
| : | **CASE NO. C2- 08-561** |
| : | |
| **v.** : | |
| : | |
| : | **JUDGE MARBLEY** |
| : | |
| : | **MAGISTRATE JUDGE KEMP** |
| **TIM DONUT U.S. LIMITED, INC., ET. AL.** : | |
| : | |
| : | |
| **DEFENDANTS.** : | |

**PLAINTIFF'S MEMORANDUM CONTRA TO DEFENDANTS' MOTIONS TO STAY DISCOVERY**

Plaintiff Solomon Realty hereby opposes the Motions of Defendants Tim Donut U.S. Limited, TDL, LRW and Lonnie Waldrop to stay discovery.[1]  The Plaintiff's position is elaborated upon in the attached Memorandum.

Respectfully submitted,

s/Rayl L. Stepter
Rayl L. Stepter (0047505)
4449 Easton Way, 2nd Floor
Columbus, Ohio  43219
(614) 934-1845
(614) 932-9906 (Fax)
*raylstepter@stepterlaw.com* (Email)
Trial Attorney for Plaintiff

---

[1]  Defendants LRW and Waldrop joined in the Motion filed by Tim Donut US Limited and TDL.  This Memorandum Contra constitutes the Plaintiff's response to both Motions.

1

**LAW AND ARGUMENT**

**I.  DEFENDANTS HAVE FAILED TO PRODUCE SUFFICIENT EVIDENCE OF THE NEED FOR A STAY OF DISCOVERY.**

Defendants have filed motions to dismiss and to stay discovery in an attempt to prevent Plaintiff from obtaining critical information in support of its lawsuit.  In spite of having filed these motions, they refuse to provide minimal discovery that may be pertinent to assisting the Court in resolving their Motions.  It is obvious that, rather than litigate on the merits, Defendants seek to impose procedural hurdles in an attempt to avoid resolution of this matter.

Defendants cite the case of <u>Ohio Bell Telephone Company, Inc. v. Global Maps, Inc.</u>, No. 2:06-CV-0549 (**Exhibit A**).  In that case, the Court stated that, in exercising its discretion over discovery issues, it is to weigh the burden of proceeding with discovery against the hardship of the denial of discovery.  Unfortunately, the Defendants spent no time explaining what burdens are present by proceeding with discovery.  Any attempt to now do so should be stricken as such should have been argued in the Motion and not in their reply memoranda.  At one point in their Motion, they refer to the "costly discovery" of discovery but fail to outline what those costs are. (See Defendants Tim Donut/TDL's Motion to Stay Discovery, pg. 9).    Instead, Defendants spent the vast bulk of their briefing attempting to argue the merits of their Motion to Dismiss.  Referencing other authorities, this Court noted:

> …a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion (citations omitted) <u>Ohio Bell</u>, *supra*, pg. 2.

Since the Defendants have the burden of establishing the need to stay discovery, their failure to meet their burden warrants denial of their Motions on this ground alone.

Assuming that the Defendants have set forth sufficient evidence of their undue burden in continuing forward with discovery, the Plaintiff argues that only rudimentary discovery typically sought in civil rights cases has been requested.  The Plaintiff has sought information via requests for production of documents upon Defendants Tim Donut, TDL, LRW, and Waldrop.  In sum, the document requests seek prior similar complaints against the Defendants, witness information, documents reflecting the financial information of the Defendants, copies of any and all agreements between Defendants and other parties of the lawsuit, copies of any and all investigations regarding complaints, and communications between the parties regarding complaints. (**Exhibit B**).  As to the interrogatories, only twelve were served against Defendant Tim Donut, twelve against Defendant TDL, and ten against Defendant LRW (**Exhibit C**). These interrogatories, in addition to seeking basic background information, seek witness information, names of other persons with similar complaints and those case numbers, and prior complaints.  Responding to these requests could hardly be unduly burdensome.  Objections to the discovery requests can be initially worked out between the parties and, should further assistance be required, an informal conference with the Court can be scheduled to resolve the remaining differences.  The Defendants may file a motion for protective order regarding any discovery that they can justify as being oppressive, unduly burdensome or expensive.  Thus, there are less drastic procedural protections in place that will address any valid concerns of the Defendants.  These

procedural protections militate against any rationale for staying discovery in its entirety at this point.

### II. HARDSHIP WILL RESULT DUE TO THE DENIAL OF DISCOVERY.

Assuming that Defendants had met their burden, the Plaintiff is able to show that a hardship would be worked upon it by a denial of the discovery. If the Court grants a stay and the Motion to Dismiss is denied, the litigation will have been substantially delayed. The federal court system has a policy concern for the expeditious resolution of litigation, Ohio Bell, *supra*.

In addition to the above, another predominant policy is to resolve cases on their merits. Foman v. Davis 371 U.S. 178, 181, 83 S.Ct. 227, 230 (1962). Curiously enough, Defendants cited Ohio Bell for support of their position, however, that authority serves as a dagger to the heart of their baseless positions. Where a question is fairly debatable, a party should not be able to use a motion raising that issue as an absolute bar to discovery. Ohio Bell, *supra,* pg. 3. Defendants indicate in their own briefing that they have been unable to identify dispositive authority on the claims raised by the Plaintiff. (See Defendants Tim Donut/TDL's Motion to Stay Discovery, pg. 9). This means that no court has found the lack of existence of the claims. On the other hand, the Plaintiff has asserted authority in support of its claims. The civil rights statutes at issue are to be interpreted broadly. "…[A] natural and commonsense reading of the statute compels the conclusion that section 1981 has broad applicability. Mahone v. Waddle**,** 564 F.2d 1018, 1028 (3rd Cir. 1977). In light of the historical interrelationship between §1981 and §1982, we see no reason to construe these sections differently…"

4

Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 439-440.  With regard to the civil rights property and contract claims, the Plaintiff has cited the case of Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, 41 F.3d 1190 (7th Cir. 1994).  There, it was held that the Plaintiff stated a claim when the defendants interfered with the Plaintiff's right to enjoyment of their property rights. Indeed, it has been held that 42 USC §1982 extends to the entire "bundle of rights" associated with holding property.  Bradley v. Carydale Enterprises, 730 F. Supp. 709, 717 (E.D. Va. 1989) (citing to Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 437; 93 S. Ct. 1090; 35 L. Ed. 2d 403 (1973)); *see also*, Lac Du Flambeau, *supra*. The rights protected do not apply solely to direct infringers but protection is also extended to third party misconduct.  Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed. 2d 386 (1969).  Generally speaking, these cases support the proposition that a civil rights plaintiff has the right to enjoy the benefits of its property without unlawful interference on the basis of race.  The Plaintiff has alleged that the Defendants committed numerous violations of its lease and that those lease violations were based upon the race of the owners of the property.

Further, these authorities support a claim of a similar violation on the basis of contract. Defendants Tim Donut and TDL attempt to obtain dismissal from the case alleging that alleged misconduct by Defendant LRW and Waldrop cannot be attributed to them.  However, these Defendants failed to mention the fact that the lease signed by the Plaintiff obligates the tenant (Tim Donut) for the actions, misconduct, and racial epithets of its subtenant, LRW/Waldrop.  For instance, some of the provisions state as follows:

5

> Para. 7 : "The Tenant will not do…anything which shall result in a nuisance to the landlord."
>
> Para. 11(a): "The Tenant will observe…Statutes,…rules and regulations…"
>
> Para. 13(A): "The Tenant shall indemnify…costs…arising out of: any breach violation or non-performance of any covenant…any damage to property…"

In addition to the lease, Defendants Tim Donut and LRW have a franchise agreement.  Presumably, this franchise agreement discusses the legal relationship between the parties, including questions of liability for the actions of the franchisee.  Plaintiff's counsel has requested, informally, a copy of the franchise agreement.  However, despite the fact that this document would constitute a minimal burden of disclosure, Defendants have refused to submit the document.  (**Exhibits D, E**).  As to Defendants TDL and Tim Donut, presumably, these parties also have an agreement which establishes their rights and responsibilities in the event of a lawsuit.  Once again, Defendants have failed to turn over this document.  The idea that producing these documents is burdensome is patently ridiculous.

Incredibly, Defendants Tim Donut and TDL also maintain that they had no knowledge of any misconduct by Defendant LRW and/or Waldrop and, as such, they should not be a party to this lawsuit.  Despite their extensive briefing, the Defendants have not spent much time, if any, in acknowledging to the Court that there was an investigation and, presumably, a report of that investigation, of Defendant Waldrop's racial remarks and racial misconduct.  The Plaintiff made numerous complaints about Defendant Waldrop/LRW's misconduct, witnesses were questioned and ultimately LRW was removed from the premises by Tim Donut/TDL.  The Plaintiff was not apprised of

6

the findings of the investigation until well after LRW's removal.  A copy of the investigation findings has been sought in discovery.  Not only do the complaints of racial harassment contradict Tim Donut/TDL's claim that they had no knowledge of racial misconduct, the investigation report, franchise agreement, and lease, may all establish potential liability for the misconduct of LRW and/or Waldrop.  In spite of this, Defendants claim that discovery should be stayed and that the Plaintiff is on a "fishing expedition". Contrarily, the Defendants are hiding critical information which will establish Plaintiff's claims on the merits.  The Plaintiff, therefore, requests that discovery go forward.

## CONCLUSION

Based upon the foregoing, Defendants' Motions should be denied.

Respectfully submitted,

s/Rayl L. Stepter
Rayl L. Stepter (0047505)
4449 Easton Way, 2nd Floor
Columbus, Ohio  43219
(614) 934-1845
(614) 932-9906 (Fax)
*raylstepter@stepterlaw.com* (Email)
Trial Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was electronically filed on July 6, 2009. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          s/Rayl L. Stepter_____
                                          Rayl L. Stepter
                                          Trial Attorney for Plaintiff