# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **SOLOMON REALTY CO,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:08-CV-561 |
| : | |
| : | JUDGE ALGENON L. MARBLEY |
| **TIM DONUT U.S. LIMITED, INC. *ET AL.*,** : | |
| : | Magistrate Judge Abel |
| **Defendants.** : | |
| : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants Lonnie Waldrop and LRW Maxtown, LLC's (collectively, "Waldrop") (Dkt. 66) and Defendants Tim Donut U.S. Limited, Inc. and the TDL Group's (collectively, "Tim Donut") (Dkt. 67) Motions to Dismiss Plaintiff Solomon Realty Company's ("Solomon Realty") Second Amended Complaint for failure to state a claim upon which relief may be granted.

For the reasons stated below, this Court **GRANTS** both motions to dismiss.

### II. BACKGROUND[1]

This case arises out of the business relationship between the parties. Solomon Realty owns a building on Polaris Parkway in Columbus, Ohio. Tim Donut leased a portion of that building from

---

[1] This statement of facts is based on the allegations in Solomon Realty's Second Amended Complaint. This Court must accept the factual allegations in the Complaint as true in deciding whether the Complaint fails to state a claim upon which relief can be granted. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)

Solomon Realty to operate a Tim Horton's franchise. Waldrop, a Tim Horton's franchisee, subleased that space from Tim Donut from May 2006 to September 2007.[2]

During the sub-tenancy, Waldrop allegedly made racially-motivated and other offensive remarks about one of Solomon Realty's owners to Solomon Realty's customers and employees as well as to the other Defendants and third parties. These statements included using the term "black bitch" to refer to the owners. The Complaint alleges that Tim Donut "condoned, tolerated, and/or [*sic*] ratified" Waldrop's statements and failed to take action based on those statements. Solomon Realty also alleges that Tim Donut breached its lease by tolerating unidentified criminal conduct and sabotage by Waldrop, failing to maintain the premises, damaging the premises, attempting to install utilities or signs not in conformity with the lease terms, and falsely stating the conditions of the premises and Solomon Realty's obligations under the lease.

Solomon Realty's Second Amended Complaint makes eight claims for relief. First, Solomon Realty claims that it was denied its right to contract by the conduct of Tim Donut and Waldrop in violation of 42 U.S.C. § 1981. Second, it claims that Tim Donut and Waldrop engaged in retaliatory conduct when Solomon Realty complained of the denial of its right to contract to Tim Donut, also in violation of 42 U.S.C. § 1981. Solomon Realty's third and fourth claims are that Tim Donut and Waldrop's actions deprived Solomon Realty of its property rights in violation of 42 U.S.C. § 1982, and that Tim Donut and Waldrop retaliated when Solomon Realty complained of the deprivation of its property rights. Fifth, Solomon Realty claims that Waldrop, Tim Donut, and the Defendant Blalock Group, breached a lease with Solomon Realty. The sixth and seventh claims are against all three Defendants for interference with contractual relations and interference with prospective

---

[2] Solomon Realty also brought state law claims against a third defendant, Blalock Group.

advantage, respectively. Finally, Solomon Realty's eighth claim is for defamation against Waldrop, Tim Donut, and Blalock Group.

On May 19, 2009, Solomon Realty filed its Second Amended Complaint. On May 27, 2009, Defendant Waldrop and LRW Maxtown, LLC filed their Motion to Dismiss. On June 1, 2009, Defendant Tim Donut U.S. Limited, Inc. and the TDL Group filed their Motion to Dismiss

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Consequently, this Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). However, this Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint need not contain

"detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550 U.S. at 556).

## IV. LAW AND ANALYSIS

### A. Claims Against Waldrop

### 1. Civil Rights Claims

Solomon Realty's first and second claims against Waldrop arise under 42 U.S.C. § 1981. The elements of the prima facie case under Section 1981 are: (1) the plaintiff is a member of a protected class; (2) purposeful discrimination based on race; and (3) the discrimination concerned the activities enumerated in the statute. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). The Supreme Court has unanimously stated that Section 1981 provides relief only "when racial discrimination blocks the creation of a contractual relationship [or] impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). The Court has emphasized that a plaintiff can state a claim under Section 1981 only when it is injured by a "racially motivated breach of [its] own contractual relationship . . . ." *Id.* at 480.

In the present action, Solomon Realty has failed to plead the existence of a contractual relationship between itself and Waldrop. The Second Amended Complaint is clear that Solomon Realty entered into a lease with Tim Donut and Tim Donut, in turn, subleased the property to Waldrop. ¶¶10–11. Under Ohio law, no privity of contract exists between a lessor and a

4

sublessee. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 804 N.E. 2d 979, 989 (Ohio Ct. App. 2004) (citing *Crowe v. Riley*, 57 N.E. 956 (Ohio 1900)); *Zevitch v. Kassai*, No. 71823, 1997 WL 793135, *3 (Ohio Ct. App. Dec. 24, 1997). Solomon Realty cites two Ohio cases about assignment of the obligation to pay rent in an attempt to show a contractual relationship between it and Waldrop.[3] Those cases are inapposite. Each merely states the rule that the original lessee remains liable to the lessor for rent due under their contract if a sublessee to whom the lessee assigns the duty to pay fails to pay. *Schulz v. Grimes*, No. 91 CA 3, 1992 Ohio App. LEXIS 577, *6 (Ohio Ct. App. Feb. 11, 1992); *Morse & Hamilton Ltd. P'ship v. The Gourmet Bagel Co.*, No. 99 AP-1253, 2000 Ohio App. LEXIS 4492, *5–6 (Ohio Ct. App. Sept. 29, 2000). Neither case establishes any rule under which the pleadings in this case would indicate a contractual relationship between Solomon Realty and Waldrop. Therefore, given that under Ohio law a sublessee does not have a contractual relationship with the original lessor, Solomon Realty's claims against Waldrop under Section 1981 is **DISMISSED**.

Solomon Realty brings its third and fourth claims against Waldrop under 42 U.S.C. § 1982, a companion civil rights statute to Section 1981. Section 1982 provides that "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The Supreme Court has interpreted Section 1982 broadly, to "encompass every racially motivated refusal to sell or rent." *City of Memphis v. Greene*, 451 U.S. 100, 121 (1981) (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 421–22 (1968)). That broad interpretation, however, does not require this

---

[3] This is not to say that the alleged comments made by Waldrop are condoned by this Court. It is understandable while Plaintiff would desire to invoke legal against Waldrop. Section 1981 is not, however, provide a vehicle to remedy any wrongs Plaintiff may have suffered.

Court to accept Solomon Realty's conclusory allegation that it was "denied the right to purchase, lease, sell, hold, convey, and enjoy the benefits of real and personal property." *See Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550 U.S. at 555). In its Second Amended Complaint, Solomon Realty alleges no facts that could sustain the inference that Waldrop's actions impaired Solomon Realty's property rights in violation of Section 1982. In its pleadings, Solomon Realty relies on two cases, *Sullivan v. Little Hunting Park*, 396 U.S. 229 (1969), and *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190 (7th Cir. 1994). Both *Sullivan* and *Lac Du Flambeau*, however, deal with a lack of access or denial of access to property. Conversely, in this case, Solomon Realty alleges that it continued to hold and control the property after the end of Waldrop's sub-tenancy, continuing to lease the property to Tim Donut. ¶12. Because Solomon Realty alleges no facts to indicate that it was deprived of property rights, Solomon Realty's claims against Waldrop under Section 1982 are **DISMISSED**.

**2. Other Claims**

Solomon Realty's fifth claim against Waldrop is for breach of contract or breach of lease. As explained in the preceding section, Solomon Realty alleged no contractual or landlord-tenant relationship with Waldrop. Therefore, Solomon Realty's fifth claim against Waldrop is **DISMISSED**.

Waldrop's motion does not challenge the sufficiency of Solomon Realty's other claims, all of which arise under state law. It is the rule in the Sixth Circuit, however, that a court should decline to exercise supplemental jurisdiction over state law claims where the plaintiff's federal claims are dismissed before trial for failure to state a claim upon which relief can be granted.

*Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988). Therefore, Solomon Realty's remaining claims against Waldrop. 28 U.S.C. § 1367(c) are **DISMISSED**.

### B. Claims Against Tim Donut

### A. Civil Rights Claims

Solomon Realty's first and second claims against Tim Donut arise under 42 U.S.C. § 1981. The elements of the prima facie case under Section 1981 are (1) the plaintiff is a member of a protected class; (2) purposeful discrimination based on race; and (3) the discrimination concerned the activities enumerated in the statute. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).

In this case, Solomon Realty has failed to allege facts sufficient to indicate a discriminatory purpose on the part of Tim Donut. The only allegations in the complaint that indicate a racially discriminatory motive are that Waldrop, not Tim Donut, made racially inflammatory and offensive remarks about one of the Solomon Realty's owners. That alone is insufficient to make Tim Donut liable. Solomon Realty alleges no facts sufficient to impute whatever discriminatory animus Waldrop may have borne against Solomon Realty to Tim Donut. Instead, Solomon Realty rests solely on the conclusory allegation that Tim Donut "condoned, tolerated, and/or [*sic*] ratified" Waldrop's statements.[4] ¶15. Moreover, while this Court has not found guiding cases involving tenants and sub-tenants, in the employment context, Section 1981 does not provide for successor liability, even where the successor was

---

[4]Furthermore, in its pleadings, Tim Donut asserts that it investigated Solomon Realty's complaints, and subsequently terminated the lease with Waldrop. This is supported by the fact that Waldrop is no longer a sub-tenant.

meaningfully involved in the discriminatory act. *See Williams v. United Dairy Farmers*, 20 F. Supp. 2d 1193, 1201 (holding that the corporate defendant was not liable for the discrimination of an employee even where the corporation was "meaningfully involved" in the discriminatory act.). Accordingly, Solomon Realty's Section 1981 claims against Tim Donut are **DISMISSED**.

Solomon Realty brings its third and fourth claims against Tim Donut under 42 U.S.C. § 1982. Like Section 1981, Section 1982 was enacted as part of the Civil Rights Act of 1866. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 390–91 (1982). Also like Section 1981, Section 1982 requires a showing of purposeful discrimination. *See id.* Solomon Realty's third and fourth claims fail for the same reason as the first and second—Solomon Realty alleges no facts indicating that Tim Donut had any discriminatory motive. Solomon Realty has also pleaded no more than the mere conclusion that there has been any interference with its property rights. That allegation is further countered by Solomon Realty's own assertion that it continues to hold and control the property as a landlord. ¶12. Therefore, Solomon Realty's third and fourth claims against Tim Donut are **DISMISSED**.

## 2. Other Claims

Solomon Realty's other claims against Tim Donut are based in state law. All of Solomon Realty's federal claims against Tim Donut are dismissed for failure to state a claim upon which relief can be granted. Accordingly, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988); 28 U.S.C. § 1367(c). Therefore, this Court **DISMISSES** Solomon Realty's remaining claims against Tim Donut.

## V. CONCLUSION

For the reasons stated above, this Court **GRANTS** Waldrop's Motion to Dismiss and **GRANTS** Tim Donut's Motion to Dismiss.  Furthermore, because all of the remaining claims in this action, including those against Waldrop, Tim Donut, Defendant Blalock Group, and all counterclaims, are state law claims, this case is **DISMISSED**.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: December 21, 2009**